Carver vs. Board of Liquidation.

## No. 8595.

### B. F. CARVER VS. THE BOARD OF LIQUIDATION.

In the absence even of suggestion to the contrary, the Court will assume that bonds, signed more than thirty years ago by the Governor of the State and other officers, were executed and issued in virtue of a power conferred by law and pursuant to its requirements.

The act of the State in purchasing her own bonds for the redemption of her debt stamps the bonds thus purchased with the insignia of validity, conformity to law, and good consideration.

Confusion did not ensue upon the State's purchase of her own bonds, and if it did, the State cannot avail herself of it, because she held them out to the world at the second sale as her valid obligations.

Cases will be decided on the pleadings of the parties and their omissions will not be supplied by the Court.

APPEAL from the Civil District Court for the Parish of Orleans. *Lazarus*, J.

*F. L. Richardson* and *H. B. Magruder* for Plaintiff and Appellant.

*J. C. Egan*, Attorney General, for Defendant and Appellee.

The opinion of the Court was delivered by

BERMUDEZ, C. J. This is an appeal from a judgment directing the funding of five certain unmatured State bonds.

The petition substantially alleges that the bonds were acquired by plaintiff in open market, for a valid consideration and in good faith; that they were issued in strict conformity to law and not in violation of the Constitution of the State or of the United States, and that they are entitled to be funded under Act 3 of 1874; that the application made to that end was illegally refused by the Board of Liquidation.

The answer was a general denial. It was subsequently amended. It specially charged that the bonds are not valid obligations of the State; that they were not issued in conformity to law and did not enure to the benefit of the State; that if they ever were valid obligations, they have been extinguished by confusion, by reason of the redemption thereof by the State; that the Act of 1872, No. 81, under which it may be claimed that they have been sold and reissued by the State, is unconstitutional, null and void, and that the attempt to sell them was an act of spoliation and divestiture of vested rights.

The bonds averred in the petition are claimed to have been issued under the provisions of Act 176 of 1853, entitled: "An Act to grant the aid of the State to the New Orleans, Opelousas and Great Western Railroad Company by subscription to the stock thereof."

Under that Act the State was to subscribe for 48,000 shares for one million two hundred thousand dollars, $1,200,000, or one-fifth of the capital stock.

The Act declares that payment of said shares shall be made in bonds of the State in manner and form as provided by law.

In 1874 Act No. 3 was passed providing for the funding of obligations of the State by exchange for bonds.

In 1875 Act No. 11, E. S., p. 110, was passed to supplement the Act of 1874.

The second Section of the Act of 1875 reads : " that the following issue of bonds and warrants, so far as the same may be now outstanding, are declared questioned and doubtful as to their legality and validity, and said Board of Liquidation are hereby prohibited from issuing bonds, authorized by Section one of the Act No. 3 of 1874, in exchange therefor, until the legality, validity and consideration of the same shall have been tested under the provisions of this Act and a final decree rendered as to their legality, validity and consideration."

The second paragraph of the Section declares that the bonds alluded to and thereafter specified are considered and held as belonging to the redemption of the State debt funds and the free school funds, and are bonds of the State of the various issues which had been redeemed or never issued, and which have been reported by the auditor of public accounts as missing or which were sold under Act No. 81, approved May 25, 1872, and issued or reissued.

The Section next proceeds to enumerate the bonds considered *"questioned and doubtful."* Among those named conspicuously figure those in aid of the New Orleans, Opelousas and Great Western Railroad Company for $79,000, of which the bonds declared upon are said to form part.

Under the provisions of Section first of the same Act of 1875, as well as under his specific allegation, which is in the very words of the statute, and particularly in the presence of the special denial of the Board of Liquidation, and of the strong reflection cast upon his bonds, it was the duty of the plaintiff to prove that they had issued in strict conformity to law, not in violation of State or Federal Constitution, and for a valid consideration.

In this he has failed.

There is no evidence that the State ever subscribed for the stock, and the bonds do not show on their face that they were issued under the authority of Act 176 of 1853, or in consideration of stock subscribed in furtherance of that Act.

The presumption that all conditions precedent for the issue of the bonds had been complied with, when they are uttered, does not exist as an invariable rule. It certainly cannot be invoked where, as is the case in the present instance, the bonds do not even refer to the law of 1853, under which it is claimed they were issued.    Gener-

Carver vs. Board of Liquidation.

ally the recitals in bonds not only refer to the law relative to their issue, but contain, at least on the reverse, either the entire law, or an extract from it. It is not until after the identification has been shown, that the reissue under the Act of 1872, No. 81, can be claimed to have taken place. The bonds reissued and claimed to be valid must be proved to have originally issued in conformity to law.

The consideration, which the Funding Acts require to be proved, is not that given by the holder of the bond who seeks payment, but that *received by the State* at the time of the issue. The plaintiff cannot claim that the burden was upon the State to prove want of consideration. By submitting himself to the requirements of the Acts he has assumed to prove that the bonds were issued in strict conformity to law and for a valid consideration received by the State. That, he has not done at all.

In the case of Lord Cecil et al., 30 An. 34, this Court held that bonds of the State, which are described in the supplemental Funding Act of 1875 as " questioned and doubtful," cannot be legally funded by the Board of Liquidation until they have been scrutinized and declared valid by this Court, upon whom rests the responsibility.

It was there held that although such bonds be negotiable in form and have passed into the hands of innocent third persons, who have purchased them in open market, before their maturity and for a valuable consideration, they nevertheless will not be a valid debt of the State, unless the holders affirmatively prove that they were issued in accordance with law, and for a valid consideration.

The rule of the commercial law in favor of the holders of ordinary negotiable paper is not applicable to such bonds.

As the plaintiff has not shown that the bonds which he holds were issued in strict conformity to law and for a valid consideration received by the State, he must fail in this appeal.

It is, therefore, ordered and decreed, that the judgment appealed from be reversed, and that this case be remanded for further proceedings according to law.

### Dissenting Opinion.

Fenner, J. My reading of the supplemental Funding Act of 1875 convinces me that it does not intend or purport to raise any question as to the original validity, legality or consideration of the bonds issued under the Act of 1853 in favor of the New Orleans, Opelousas & Great Western Railroad, or as to the constitutionality of that Act. Under the plain terms of the supplemental Funding Act, it only questioned a small part of said bonds, which, having been taken up or held by

the State, had been sold and reissued under Act 81 of 1872, and on that ground alone. It is equally clear, that the only issues intended to be raised by the answer of the defendant in this case were the constitutionality of the Act of 1872, and the legality, validity and consideration of the reissuance of said bonds under said Act. This is apparent from the briefs filed herein by both parties, in which the issues last stated are the only ones referred to.

The Court remands the case for the examination of questions never raised or referred to by the parties or suggested by the Funding Act.

The genuineness of the bonds presented is undisputed. It is notorious that all bonds of the same class have been funded, except those questioned by the supplemental Funding Act, for the reasons therein stated.

I think the proper issues in the case should be decided, and that in remanding the cause, for the purposes stated in the majority opinion, we impose upon relator a duty entirely superfluous, and which, owing to the lapse of time, may possibly be difficult of performance.

. I, therefore, dissent.

ON REHEARING.

· The opinion of the Court was delivered by

MANNING, J. The bonds offered for funding by the plaintiff are signed by Governor Hébert, by the Auditor, Treasurer, and Secretary of State. The genuineness of none of these signatures is denied, or in any manner questioned. The form of the bond is literally copied from the Act of 1853. In the absence even of suggestion to the contrary, we must assume that bonds, signed nearly thirty years ago by the Governor and other State officers, were executed and issued in virtue of a power conferred by law, and pursuant to its requirements. Hamlin vs. Bd. Liq. 30 Ann. 447.

In remanding the case we required proof that the State subscribed for the stock of the Railroad Company, and that the bonds were issued in payment of that subscription. We are now satisfied this was error. It is virtually requiring an impossibility, since at this interval with the derangements that have occurred in it, such testimony is not accessible, but if it was at hand, it is raising an issue outside of the pleadings, and requiring proof the production of which the defendant waived.

The question raised by the answer is the alleged confusion, consequent upon the State buying up these bonds after they had been issued, and the alleged illegal resale of them under the Act of 1872. That Act has been declared unconstitutional *quoad* the bonds belonging to the Free School fund, (Durant's case, 29 Ann. 77) but the proof in this

record is complete that the plaintiff's bonds never formed a part of that fund, and in Sun Ins. Co. case, affirming Durant's, three of the eleven bonds then offered were found not to have belonged to that fund, but to have been sold under the Act of 1872, in both features like the bonds now offered, and the Court ordered them funded. Sun Ins. Co. vs. Bd. Liq. 31 Ann. 175.

Of the bonds sold under the Act of 1872, over a million dollars in amount belonged to the school fund, the others to the fund for the redemption of the State debt. The bonds of the plaintiff were in this latter class. Many years after they had been issued and been put on the market, the State bought them with the fund she had created for the redemption for her debt, and they were in possession of her officers when sold again under the Act of 1872. She would not have bought invalid bonds, or bonds that had not been primarily issued in strict conformity to law, or that were otherwise tainted. Her own act in thus purchasing them for her own purposes stamps the original issue of them with the marks of conformity to law, constitutionality, and valid consideration.

It is therefore manifest that the inquiry as to the legality and validity of these bonds, and others *in consimili casu*, directed to be made by the supplemental funding Act of 1875, refers to the sale of them and reissue under the Act of 1872, and it is so treated in the pleadings and in the briefs on both sides.

Confusion did not ensue on the State's purchase of them prior to 1872, or if it did, the State cannot avail herself of the plea since she held them out to the world as her obligations for a second sale. The constitutionality of the Act is attacked because its title does not indicate the creation of a debt. The debt had been already created in the shape of " State warrants and certificates of indebtedness," and the title includes the creation of " a fund for the payment" of them. Another objection is that the General Assembly was prohibited from contracting a debt exceeding a hundred thousand dollars without providing adequate means of payment in the same law. No new debt was contracted by the Act of 1872, but means were provided by it for the conversion of a debt already existing into another—the substitution of one kind of obligations to another, a change in the instrument evidencing the debt. With the policy or impolicy of that legislation we have nothing to do. We have been often compelled to recognise and enforce legislation that did not commend itself to our judgment, but we should no more trench upon the legislative department of the government than we would permit it to intrude into our sphere.

As was said in Hamlin's case *supra*, the question which alone interests

the State and which the supplementary funding Act directed to be determined contradictorily with the Board of Liquidation, is whether the bond presented for funding is a valid obligation of the State, and as such entitled to be funded. The bonds of the plaintiff conform to the requirements of that Act and should be funded. Therefore,

It is ordered and decreed that our former judgment be set aside, and that the judgment of the lower court is affirmed with costs.